IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TANYA PORTER,<br><br>    Plaintiff,<br><br>v.<br><br>STAPLES THE OFFICE SUPERSTORE, LLC,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:20-cv-00353-JNP<br><br>District Judge Jill N. Parrish |

## INTRODUCTION

Before the court is a Motion to Dismiss (ECF No. 14) filed by Defendant Staples The Office Superstore, LLC ("Staples"). Plaintiff Tanya Porter ("Porter") asserts four causes of action: (1) retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; (2) intentional infliction of emotional distress; (3) defamation; and (4) false light invasion of privacy. Staples moves to dismiss each of these causes of action under Federal Rule of Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth herein, the court GRANTS IN PART and DENIES IN PART Staples' Motion.

## BACKGROUND

This case centers on Staples' termination of Porter after she took FMLA leave. Porter began her employment at Staples on January 9, 2000, at its store in Orem, Utah. She was promoted to the position of General Manager, a position she held for 15 years. Staples never took disciplinary

action against Porter during her nearly 20 years of employment and regarded her performance highly; it ranked her among the best in the company and placed her in the "President's Club."

In August 2019, Porter's physician "required her to take time off from work in order to recover from her mental and emotional health problems." ECF No. 2 ¶ 21. Accordingly, she requested FMLA leave, and Staples granted the request. Porter's FMLA leave lasted from August 23, 2019 until November 12, 2019, when her physician authorized her to return to work part-time—four hours per day. Aaron Ellensburg ("Ellensburg")[1], Porter's District Manager, approved this schedule, and Porter returned to work at the Orem store. While she did not act in her role as General Manager during this time, she received full pay.

After she returned to part-time work, Porter became aware of a $15 coupon for batteries that Staples was offering to customers. The coupon did not contain any restrictions on its face, and Porter asked Michael Packham ("Packham"), the Assistant Store Manager, if there were any restrictions related to its use. He informed her that he was aware of no restrictions on the use of the coupon. On November 29, 2019, Porter used the coupon to purchase batteries from Staples. Porter was aware that other Staples employees used the same coupon around the same time.

On December 5, 2019, Staples emailed Porter and informed her that the coupon was only to be used following a $50 purchase from the copy center. This was the first time Porter became aware of any restrictions related to the use of the coupon. Within days of receiving the email, and before the coupon's January 4, 2020 expiration, Porter made a $62.12 purchase from the copy center.

---

[1] The Complaint refers to this individual alternately as "Mr. Ellensburg" and "Mr. Ellenberger." The court will refer to him as "Ellensburg" because that is the way it appears first in the Complaint.

At some point after Porter made her purchase from the copy center, Ellensburg learned that Porter had incorrectly used the coupon. Porter voluntarily wrote a description of her use of the coupon and on December 18, 2019 submitted it to Ellensburg and to Carson Altice ("Altice"), a member of Staples' Loss Prevention Department. Ellensburg and Altice assured Porter that the use of the coupon was an "understandable mistake" and that it would not result in her termination, especially in light of the fact that she later made the requisite purchase from the copy center. *Id.* ¶ 42.

However, on the first day that Porter returned to full-time work, January 8, 2020, Ellensburg informed Porter that her use of the coupon constituted an "ethical lapse" and a "fraudulent action[ ]" for which Staples had a "zero-tolerance policy." *Id.* ¶ 46. Ellensburg further informed Porter that Staples was terminating her employment for her "violation of Staples Standards of Conduct." *Id.* ¶ 47. Porter alleges that the Human Resources Department became aware of her written statement following her conversations with Ellensburg and Altice and demanded her termination.

Porter also alleges that at least two other Staples employees at the Orem store used the same coupon and were not fired. She further alleges that during the entire tenure of her employment at Staples, the improper use of a coupon had never been treated as a "zero-tolerance" violation, but rather merited only a warning. Further, the "Staples Policy: Performance and Management Process" includes a provision for the immediate termination of employment, but "mere violations of the 'Staples Standards of Conduct' are not included in the list of immediately terminable offenses." *Id.* ¶ 54. Rather, several warnings or "Counselings" are normally provided before termination. Porter also alleges that Staples informed its Orem store employees that she was fired for her "'ethical lapse and fraudulent actions' related to her use of the $15 coupon." *Id.* ¶ 59.

Porter further alleges that Staples knew that such language, "ethical lapse and fraudulent actions," would be highly offensive to her.

As a result of these events, Porter asserts against Staples the four causes of action listed above: (1) retaliation in violation of the FMLA, 29 U.S.C. § 2601 *et seq.*; (2) intentional infliction of emotional distress; (3) defamation; and (4) false light invasion of privacy. Staples moves to dismiss each of these claims under Rule 12(b)(6). The court considers each claim below.

## LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The complaint must allege more than labels or legal conclusions and its factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

## DISCUSSION

### I.     FMLA Retaliation

The FMLA provides that an employer may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA].'" 29 U.S.C. § 2615(a)(2). The Tenth Circuit has "construed this provision of the FMLA as creating a retaliation theory of recovery." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1004 (10th Cir. 2011) (citing *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006)).

It is therefore "unlawful for an employer to retaliate against an employee for taking FMLA leave." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1318 (10th Cir 2017) (quoting *Smothers*, 740 F.3d 530, 539–40 (10th Cir. 2014). Porter asserts a cause of action for retaliation under the FMLA, alleging that Staples terminated her employment in retaliation for taking FMLA leave. Staples moves to dismiss this cause of action under Rule 12(b)(6), arguing that Porter has failed to state a claim for relief.

Courts analyze FMLA retaliation claims using the *McDonnell-Douglas* burden-shifting framework. *See Dewitt*, 845 F.3d at 1318 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973)). Under this framework, a plaintiff must establish a *prima facie* case of retaliation. *Id.* at 1307. If the plaintiff satisfies this burden, the employer must offer a "legitimate non-discriminatory reason for the adverse employment action." *Id.* The burden then shifts back to the plaintiff to show that the employer's proffered reason is pretextual. *Id.* The Supreme Court has explained, however, that the *McDonnell-Douglas* standard is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Still, to determine whether a plaintiff states a plausible claim for relief in a retaliation case, courts "examine the first step of the *McDonell Douglas* framework: the elements [a plaintiff] would need to establish to prove a prima-facie case." *Morman v. Campbell Cty. Mem'l Hosp.*, 632 Fed. Appx. 927, 933 (10th Cir. 2015) (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012)).

To successfully establish a prima facie case of retaliation under the FMLA, a plaintiff must show that (1) she engaged in a protected activity, (2) she was subject to adverse employment action, and (3) a causal connection exists between the protected activity and the adverse action. *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1318–19 (10th Cir 2017) (citation omitted). In moving to dismiss Porter's claims, Staples does not dispute that Porter has sufficiently alleged the first two elements.

5

Rather, it argues that she has failed to allege any facts suggesting she was terminated *because* she took FMLA leave. Porter responds that at the motion-to-dismiss stage, causation may be established by temporal proximity alone. She argues that her return from FMLA leave and her termination were sufficiently close in time to support a finding of causation.

The Tenth Circuit has held that a "retaliatory motive may be inferred when an adverse action closely follows protected activity." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citation omitted). The closer the adverse employment action to the protected activity, the more likely it is to evidence a causal connection. *Id.* A one-and-a-half-month period may, by itself, establish causation. *Id.* (citing *Ramirez v. Oklahoma Dept. of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994)). On the other hand, a three-month period, without additional evidence, may not support a finding of causation. *Id.* (citing *Richmond v ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997).

Here, Staples terminated Porter's employment on January 8, 2020. The parties disagree on the relevant date for determining temporal proximity. Porter argues that the appropriate date from which to measure is the day she returned to her full-time status as a General Manager, January 8, 2020. Staples, on the other hand, argues that the relevant date is November 12, 2019, the day Porter initially returned from her FMLA leave on a part-time basis (while still receiving full pay). Regardless of which date is used, the temporal proximity in this case is sufficiently close to establish a causal connection. Even Staples' suggested date falls about eight weeks before Porters' termination, which is far closer to the one-and-a-half month period in *Ramirez,* 41 F.3d at 596, than it is to the three-month period in *Richmond*, 120 F.3d at 209. The court therefore concludes that Porter has adequately stated a claim for retaliation under the FMLA.

## II.     Intentional Infliction of Emotional Distress

Porter also alleges that Staples intentionally inflicted emotional distress on her by making "false and damning statements about [her]." ECF No. 2 ¶ 79. Staples told "various store employees and others" that Porter's behavior constituted an "ethical lapse" and "fraudulent actions." *Id.* ¶ 80–82. Porter alleges that Staples made these statements "for the purpose of inflicting emotional distress on Ms. Porter and in retaliation for her use of FMLA leave." *Id.* ¶ 83. She alleges that Staples knew that its actions would cause Porter severe emotional stress because it knew that she was already "dealing with mental health issues, including depression, mood disturbances, and acute stress." *Id.* ¶ 84. Staples moves to dismiss the claim, arguing that none of the conduct alleged in the Complaint "is sufficiently 'outrageous' as a matter of law to state an IIED claim." ECF No. 14 at 7. It also argues that Porter failed to allege who at Staples intended to cause her emotional distress, and that she failed to allege what distress she experienced beyond the conditions she was experiencing prior to her termination.

To state a claim for intentional infliction of emotional distress under Utah law, a plaintiff must plausibly allege:

> (i) the [defendant's] conduct [complained of] was outrageous and intolerable in that it offended . . . generally accepted standards of decency and morality; (ii) [the defendant] intended to cause, or acted in reckless disregard of the likelihood of causing, emotional distress; (iii) [the plaintiff] suffered severe emotional distress; and (iv) [the defendant's] conduct proximately caused [the] emotional distress.

*Prince v. Bear River Mut. Ins. Co.*, 56 P.3d 524, 535 (Utah 2002) (quoting *Retherford v. AT&T Commc'ns of the Mountain States, Inc.*, 844 P.2d 949, 970–71 (Utah 1992)) (alterations in original). Courts are to determine whether a reasonable person could consider a defendant's conduct to be outrageous, and if not, courts may dismiss a plaintiff's claim for intentional infliction

of emotional distress. *Id.* at 536 (citations omitted). To qualify as outrageous, a defendant's conduct must "evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair." *Franco v. The Church of Jesus Christ of Latter-day Saints*, 21 P.3d 198, 208 (Utah 2001) (quoting 86 C.J.S. Torts § 72 (1997)); s*ee also In re Estate of Grimm*, 784 P.2d 1238, 1246 (Utah Ct. App. 1989) ("The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." (quoting Restatement (Second) of Torts § 46 cmt. j (Am. Law Inst. 1975))). Additionally, conduct is not outrageous "merely because it is tortious, injurious, or malicious, or because it would give rise to punitive damages, or because it is illegal." *Franco*, 21 P.3d at 208.

Utah courts faced with similar facts have concluded that the conduct at issue was not outrageous as a matter of law. In *Robertson v. Utah Fuel Co.*, 889 P.2d 1382, 1383–84 (Utah Ct. App. 1995), the trial court dismissed a claim for intentional infliction of emotional distress claim where the plaintiff was required to meet individually with his co-workers to discuss their problems with his drug and alcohol use and was subsequently terminated. The Utah Court of Appeals affirmed, explaining that "[t]he mere fact that Robertson was discharged, coupled with the fact that he was purportedly required to discuss his drug addiction with his subordinates, does not rise to the level of outrageousness or intolerable conduct necessary to establish a prima facie claim of emotional distress." *Id.* at 1389; s*ee also Zoumadakis v. Uintah Basin Med. Ctr.*, 122 P.3d 891, 894 (Utah. Ct. App. 2005) (explaining that wrongful termination coupled with "false, derogatory statements" made about plaintiff did not "give rise to a claim of intentional infliction of emotional distress."); *Zemaitiene v. Corporation of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, No. 2:16-cv-1271-RJS, 2018 WL 1581252, at *4 (D. Utah Mar. 28, 2018) (defendant's

conduct not outrageous despite terminating plaintiff, hitting her with a piece of clothing, and telling her that her country was "full of terrorists" and that she was "one of them.").

Porter argues that this case is distinguishable from those cited above due to her "particular susceptibility to emotional distress, sometimes referred to as the eggshell plaintiff theory." ECF No. 25 at 9. She cites the Second Restatement of Torts:

> The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know.

Restatement (Second) of Torts § 46 cmt. f (Am. Law Inst. 1975). But the excerpt continues:

> It must be emphasized again, however, that major outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough.

*Id.* Here, Porter has not alleged that Staples' conduct gave rise to "major outrage" or other indicia of emotional distress. Indeed, she has not alleged any ill effects resulting from Staples' conduct, other than "severe emotional distress." ECF No. 2 ¶ 85. She also failed to allege specific facts indicating that defamatory statements about her character would be especially damaging to her, other than a general description of her mental health issues: depression, mood disturbances, and acute stress. Absent such factual allegations, the court cannot conclude that Staples knew or even could have known that its conduct would impact Porter to an extent so severe as to make it

9

outrageous, even if it was aware of Porter's struggles with mental health. Accordingly, the court dismisses Porter's claim for intentional infliction of emotional distress.[2]

### III. Defamation

Porter also brings a cause of action for defamation and defamation per se. She alleges that Staples told the other employees at its Orem store that she was fired for her "'ethical lapse and fraudulent actions' related to her use of the $15 coupon." ECF No. ¶ 59. She asserts that these statements were false, that Staples knew they were false, and that they "caused actual harm to Ms. Porter by impacting her ability to find further employment." *Id.* ¶ 99. She also asserts that the statements are actionable per se because they are "so injurious to [her] character . . . that damages can be presumed from the words alone." *Id.* ¶ 97–98. Staples moves to dismiss, arguing that the alleged statements "simply do[ ] not give rise to a claim for defamation." ECF No. 48 at 11. It further argues that the statements are not actionable per se because they do not touch specifically on "the specific skills and character required to carry out her specific profession." *Id.* at 13. Finally, it argues that the statements Staples made to its employees regarding the reasons for Porter's termination are privileged.

In Utah, "[a] prima facie case for defamation must demonstrate that '(1) the defendant published the statements [in print or orally]; (2) the statements were false; (3) the statements were not subject to privilege; (4) the statements were published with the requisite degree of fault; and (5) the statements resulted in damages." *Jacob v. Bezzant*, 212 P.3d 535, 543 (Utah 2009) (quoting *Oman v. Davis Sch. Dist.*, 194 P.3d 956, 972 (Utah 2008)) (second alteration in original). The fifth

---

[2] Staples also argues that Porter's claim for intentional infliction of emotional distress is preempted by the Utah Workers' Compensation Act. Because the court concludes that Porter has failed to state a claim for relief, it need not reach this issue.

element requires a plaintiff to plead special damages, or the loss of something having economic or pecuniary value. *Allred v. Cook*, 590 P.2d 318, 320–21 (Utah 1979). If no special damages are pled, a claim may nonetheless survive if it alleges defamation per se—defamation that contains words that "must, on their face . . . , be unmistakably recognized as injurious." *Bezzant*, 212 P.3d at 545. The Utah Supreme Court has limited defamation per se to four categories of injurious statements: (1) an allegation of criminal conduct, (2) imputation of a loathsome disease, (3) unchaste behavior, and (4) "conduct which is incongruous with the exercise of a lawful business, trade, profession, or office." *Id.*

Here, Porter's claim fails because she fails to plausibly allege either special damages or that Staple's words constituted defamation per se. First, the only allegation in the Complaint that could be construed as a special harm is the effect on Porter's ability to find further employment. *See* ECF No. 2 ¶ 99.[3] But she alleges nothing further to support this assertion. She alleges that Staples only published her allegedly unethical behavior to her former co-workers; she does not allege that the information was shared with anyone outside of Staples, such as other potential employers.[4] Nor does she allege that she sought other employment and was denied because of Staples' comments. The only category of defamation per se into which Staples' alleged statements might fall is the fourth—accusing Porter of conduct incongruous with the exercise of a profession.

---

[3] Porter also alleges that she lost "pay" and "compensation" as a result of the defamation. But she was not fired from Staples because of the defamatory statements—Staples is the one that allegedly defamed her. She was terminated either in retaliation for using FMLA leave or because she inappropriately used the coupon, but not as a result of defamation.

[4] While Porter alleges that Staples shared this information with all Orem store employees <u>and others</u>, she does not allege who these others are or how many persons "others" includes. This vague allegation does not suffice to show that potential employers were aware of Staples' alleged statements about Porter.

But no reasonable person would consider such words unmistakably injurious. *See Bezzant*, 212 P.3d at 545. Even if Staples framed Porter's acts as unethical or fraudulent, an accusation that she improperly used a coupon to buy $15 batteries is not so injurious as to rise to the level of defamation per se. Because Porter has failed to allege special damages or facts supporting a claim of defamation per se, the court dismisses her third cause of action.

## IV.     False Light

Porter also asserts a cause of action for invasion of privacy under the theory that Staples made public statements about Porter that painted her in a false light. Staples moves to dismiss this claim, arguing that Staples' statements lacked the requisite publicity. It also argues that the statements would not be highly offensive to a reasonable person.

Utah law recognizes a cause of action for false light invasion of privacy. *See Bezzant*, 212 P.3d at 544. "A prima facie case for false light requires a plaintiff to demonstrate that (1) the defendant publicized a matter concerning the plaintiff that placed the plaintiff before the public in a false light, (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person, and (3) the defendant knew or recklessly disregarded the falsity of the publicized matter and the false light in which the plaintiff was placed." *Id.* Importantly, the "publicity" requirement for a false light claim is different from the "publication" requirement of a defamation claim. *See Williams v. FedEx Corp. Servs.*, No. 2:13-CV-37 TS, 2013 WL 4500431, at *4 (D. Utah Aug. 21, 2013) (citing Restatement (Second) of Torts § 652D cmt. a (Am. Law Inst. 1975)). While the latter requires that the information only be shared with one third party, false light publicity "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* (quoting Restatement (Second) of Torts § 652D cmt. a (Am. Law Inst. 1975)).

12

Several courts presented with false light claims have held that information disseminated to a plaintiff's co-workers does not satisfy the publicity requirement. *See Williams*, 2013 WL 4500431, at *4; *Frobose v. Am. Sav. And Loan Ass'n of Danville*, 152 F.3d 602, 617–18 (7th Cir. 1998); *Pace v. Bristol Hosp.*, 964 F. Supp. 628, 631–32 (D. Conn. 1997). These courts reason that the circumstances surrounding an employee's termination would naturally interest her co-workers, even if they lack a "duty or a responsibility to know the circumstances surrounding [a] plaintiff's dismissal." *Pace*, 964 F. Supp. at 631; *see also Frobose*, 152 F.3d at 618 (Allegedly false remarks were "communications and actions between and among the employees, officers, and directors of the association, who by virtue of their positions would have a natural interest in, if not a responsibility to know about, the matters communicated.").

Porter Cites three cases to support the proposition that disclosure to co-workers suffices for a false light claim: *Kelly v. Gen. Tel. Co.*, 136 Cal. Rptr. 184 (Ct. App. 1982); *Agarwal v. Johnson*, 603 P.2d 58 (Cal. 1979); and *Soto-Lebrón v. Fed. Express Corp.*, 538 F.3d 45 (1st Cir. 2008). But these cases are inapposite—each deals with claims for defamation; none deals with a claim for false light invasion of privacy. Thus, the respective courts in each of those cases analyzed publication as it relates to defamation and not publicity as it relates to false light claims. As explained above, courts distinguish between the publication requirement for a defamation claim and the publicity requirement for a false light claim. While the former only requires disclosure to a third party, the latter requires broader dissemination, such that it "must be regarded as substantially certain to become . . . public knowledge." Restatement (Second) of Torts § 652D cmt. a (Am. Law Inst. 1975).

Here, Porter alleges that Staples informed all of its Orem store employees that Porter was terminated due to an ethical lapse and for fraudulent actions, namely, the improper use of a coupon.

The court agrees with the weight of the authority on this issue—dissemination to a plaintiff's co-workers alone does not satisfy the publicity requirement of a false light invasion of privacy claim. While Porter also alleges that Staples disclosed this information to "others," such a vague allegation, even viewed in the light most favorable to Porter, does not suffice to show that the information was "substantially certain to become . . . public knowledge." *Id.* Because the court concludes that Porter has not adequately pled that the allegedly damaging information was publicized, it need not decide whether Staples' statements would be highly offensive to a reasonable person.

## CONCLUSION AND ORDER

The court HEREBY ORDERS as follows:

1. Defendant's Motion to Dismiss Porter's First Cause of Action is DENIED.

2. Defendant's Motion to Dismiss Porter's Second Cause of Action is GRANTED. Porter's claim for intentional infliction of emotional distress is DISMISSED WITHOUT PREJUDICE.

3. Defendant's Motion to Dismiss Porter's Third Cause of Action is GRANTED. Porter's claim for defamation is DISMISSED WITHOUT PREJUDICE.

4. Defendant's Motion to Dismiss Porter's Fourth Cause of Action is GRANTED. Porter's claim for false light invasion of privacy is DISMISSED WITHOUT PREJUDICE.

DATED February 22, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge